PER CURIAM.
This is a “slip and fall” case which has been appealed by the plaintiffs, husband and wife, from a final order of involuntary non-suit entered at the close of plaintiffs’ evidence after the trial judge indicated that he would grant the defendant’s motion for directed verdicts. The plaintiff-wife sought damages for personal injuries resulting from her fall. The husband’s suit was on his derivative claim for expenses incurred and loss of consortium due to his wife’s injuries.
Plaintiffs J. H. and Ettie Lee Waters were shopping in the defendant’s grocery store. As they approached a checkout counter they saw a woman hurrying toward the same counter. They had momentarily turned into that lane when a checkout clerk at another counter, one Doris Taylor with whom the plaintiffs were well acquainted, motioned to them to come to her counter which was two or three counters away. After motioning to the plaintiffs Doris Taylor saw a jar of baby food fall off another customer’s cart onto the floor opposite an adjacent counter. Doris Taylor, testifying as plaintiffs’.witness, stated that the jar broke about four or five feet from the plaintiffs, but the plaintiffs testified that they did not know of the broken jar or that any such jar had in fact fallen to the floor. Essentially the plaintiffs’ cases are bottomed on failure of the defendant through its employees to warn the plaintiffs in time to avoid the accident. After the fall of the jar Doris Taylor instantly pushed a button signaling for a stock boy to clean up the debris. Plaintiff Ettie Waters slipped and fell almost immediately thereafter as she proceeded toward the counter operated by Doris Taylor.
Doris Taylor was, as previously indicated, a witness called on behalf of the plaintiffs and testified in pertinent part as follows:
“Q. How far was the jar, approximately, away from Mrs. Waters when it fell? How far away was that from where Mrs. Waters was at that time? I’m talking about right at the time it fell, how far away was it from Mrs. Waters, just an approximation?
“A. Let’s see. They were almost to No. 4 checkout lane when it fell, just to the right of No. 4. Couldn’t have been over four or five feet I don’t believe.”
She also testified:
“Q. And what did you do?
“A. I immediately, as I saw it fall, called for someone to clean it up.
“Q. Did you call to any person in particular ?
“A. I’m not sure who it was. I know that he was standing over to the *579 left end of the store from the registers and I called to him that there was something broken — some baby food broken, to come clean it up at once.
* * * * * *
“A. At the time I called, I rang the buzzer also.
* * * * * *
“Q. * * * After the baby food fell and the baby food was on the floor and Mrs. Waters was down by check out lane No. 4, did you say anything to Mrs. Waters?
“A. No, I didn’t. I had just motioned to her to come over to my lane before the baby food fell and I didn’t have time between the time the baby food fell and I called for someone to clean it up to call her.” (Emphasis added)
The court inquired of Doris Taylor:
“Q. Can you tell us about how far you were from the spot where the baby jar fell, or the jar with the baby food in it?
“A. Sir, so far as feet, I couldn’t. There was one check out lane between the one that I was standing in and the one where the baby food fell.”
Plaintiff Ettie Lee Waters testified:
“Q. How long a time if you can tell with reasonable certainty, how long a time was it from the time you had walked into the lane until you had fallen ?
“A. Well we stood there several seconds before they motioned for us to come over.” (Emphasis added)
At the close of plaintiffs’ case, the defendant moved for directed verdicts on the ground inter alia that the evidence failed to show negligence on the part of the defendant. During argument on the motion the court and the attorney for the plaintiffs, Leffert L. Mabie, Jr., engaged in the following colloquy:
“THE COURT: * * * The testimony as I recall it in substance is that she, your plaintiff here, Mrs. Waters, was in this line or merely adjacent to it and that Mrs. Taylor motioned to her or we can assume from the testimony that one said called and one motioned, it doesn’t make any difference, to come to that lane and immediately after that, a matter of a second or two after that the baby food—
“MR. MABIE: Four or five seconds.
“THE COURT: —four or five seconds, the baby food dropped and that’s the positive testimony of it and that before she had time to say or do anything else, the lady had fallen.
“MR. MABIE: Plus the time it took to walk from this corner to that check out lane and stand there in the check out lane.
“THE COURT: Four or five feet you say?
“MR. MABIE: No sir.
“THE COURT: Isn’t that the testimony before they left to go to the new counter, four or five feet?
“MR. MABIE: Right. The defendant was four or five feet from the time that she backed out and walked four or five feet. That’s what she said how far she walked from the time she got out of the check out lane until she stepped into the baby food. But my point is that they also walked the distance from the turn to the lane.
“Now the specific testimony was that Mr. Waters saw this woman who was in line ahead of them, who the testimony shows clearly was the woman who dropped the baby food before she got in line, he saw her in line 30 feet away so they had a walk of 30 feet. Then they stayed in line a matter of several *580 seconds or how long it was, anyway at least several seconds, and then in addition to that they backed out and walked four or five feet and it was as Mrs.—
“THE COURT: Frankly, I just don’t — I just don’t think — I’m very sympathetic to the plaintiffs, of course, as all of us are and as we would charge the jury, you can’t consider that.
“MR. MABIE: Judge, am I wrong in anything I have said there ? I think the testimony will back it up.
“THE COURT : I don’t think there’s any testimony here that would authorize the jury to construe as being the negligence or negligent act or negligent conduct on the part of the defendant in creating or maintaining a dangerous condition or in negligently not warning them of the dangerous condition. I just don’t think there’s any testimony there.
“MR. MABIE: If Your Honor please, if they had knowledge of it, if they had knowledge of it for a period of the length of time it took to walk at a normal rate of speed—
“THE COURT : If they had knowledge of it for a length of time in which to advise them, I think Mr. Mabie and the testimony just doesn’t show it.
“MR. MABIE: If Your Honor please, it does show it in this respect and I would like to point this out to you, that it shows that the woman who knew of it, who saw it drop, had knowledge of it, and she specifically testified differently. I know she testified no, she didn’t have time because it was too quick. But the testimony of other witnesses shows that she very definitely had time to say to this plaintiff, ‘look out for that stuff that’s in front of you.’ Now there was no question that she had time to do that and didn’t do it.
“THE COURT: I don’t think the testimony bears you out for this reason, that the testimony of Mr. and Mrs. Waters, they knew nothing of the time of the falling * * * of the baby food, they don’t know when it fell.
“The only positive testimony, it’s your witness [clerk Doris Taylor] is that they were at this other counter, that they were friends and she knew her and she motioned to her to come ahead. And immediately, say four or five seconds after she motioned before she had time to get started, the jar falls, it breaks, and she says before I could say anything else, she had fallen.”
The trial court did not dispose of this case summarily. He heard and carefully considered all the testimony offered on behalf of the plaintiffs and concluded that the evidence was not sufficient to take the case to the jury. The court’s order based on that conclusion should remain undisturbed unless clearly erroneous. Salter v. Knowles, Fla.App.1957, 97 So.2d 138, 139.
The plaintiffs’ proximity to the spot where the jar fell and the extremely brief interval of time between the fall of the jar and the fall of plaintiff Ettie Lee Waters clearly distinguish this case from those cited by counsel. Compare, for example, Sandford v. Firestone Tire and Rubber Co., Fla.App. 1962, 139 So.2d 916, 918 and Hall v. Holland, Fla.1950, 47 So.2d 889, 891.
We are mindful of the rule that negligence vel non is generally a jury question where the evidence of negligence, though slight, is appreciable; but where the plaintiffs’ evidence and all reasonable inferences disclose no such negligence, the trial court should grant defendant's motion for the' affirmative charge.
Viewing the evidence in the light most favorable to the plaintiffs, we are of the opinion that the trial court did not err in holding the plaintiffs’ evidence insufficient to make a prima facie showing of negligence on the part of the defendant. A contrary ruling would, in effect, redefine the *581 line of responsibility of a proprietor to a business invitee and erroneously extend it into the area of insurance.
Affirmed.
SHANNON, C. J., and WHITE and SMITH, JJ., concur.