SHANNON, Judge.
The appellant, defendant below, complains of judgments obtained by the appellees, plaintiffs below, in a personal injury suit. Also, one of the appellees has cross-appealed complaining that the verdict in his behalf was inadequate.
Involved in this case is the question of whether the appellant was negligent in failing to remove a broken jar of mayonnaise from the floor, or, in the alternative, in failing to warn of the presence of such substance after gaining knowledge of its existence and its injury producing character. The appellant made timely motions for directed verdict, as well as the usual post-verdict motions, all of which were denied.
There is little conflict in the evidence. The appellees were business invitees in the appellant’s store, and the appellee-wife slipped and fell on the aforementioned broken jar of mayonnaise. Her husband was in another part of the store, so his testimony is not relevant to our question.
Other than Appellee Inez M. Heiser, only two witnesses’ testimony has any connection with the question of liability. One of these witnesses, Miss Kennen, was called by the plaintiff below, she being one of the cashiers working at a check-out counter directly south of the display island at which Mrs. Heiser fell. The counter at which she worked was separated from the place of the accident by an aisle estimated to be ten feet in width and running east and west between the cashier counter and the display island at which the accident occurred. The other witness was a stock man employed by the appellant, by the name of Juleo Marrero. In view of the fact that the testimony of these two witnesses is conclusive as to the question of liability, we will limit our consideration in this opinion to their testimony alone.
Juleo Marrero testified, in part, as follows :
“Q. Now, what were you doing just prior to the time that you saw Mrs. Heiser fall?
“A. I was in the next aisle pushing a float with some stuff to get in the shelf when a—
******
“Q. How far was that from the aisle that Mrs. Heiser fell in?
“A. Well, it was the same shelf, but in one in the other side.
******
“Q. How long was it from the time you heard something fall until the time you actually saw Mrs. Heiser fall?
“A. I would say a matter of seconds. Probably a minute. Probably a minute and a half. Depends. The store was crowded and the trouble — main trouble was you couldn’t get through right away.”
As can be seen, this witness heard the jar of mayonnaise fall to the floor, and as soon as he heard it he started for the scene. At the time Mrs. Heiser fell, the distance between this witness and Mrs. Heiser was estimated to be from three to four feet.
Miss Kennen, a witness for the appellees, was checking out a customer when that customer advised her that a jar of mayonnaise had been broken. After finishing the check-out, which consisted of only a few items, she immediately left her counter and proceeded to the office where she advised the supervisory personnel of the situation. The cashier in the office immediately called a bag boy over the public address system to clean up the mayonnaise. Miss Kennen went back to her station, at which time she saw Mrs. Heiser on the floor. There is nothing in the record to show that this witness had any knowledge of Mrs. Heiser’s fall until she actually saw her. Thus, the pertinent facts in regard to the length of time that the mayonnaise had been on the floor prior to the occurrence of the accident must be derived from the testimony of Mar-rero. His testimony places such time as a matter of seconds, perhaps as long as one and one-half minutes. In other words, the *542 time clement involved here is ninety seconds at the most.
The appellant in its main brief relies entirely upon a case from this court, Waters v. Winn-Dixie Stores, Inc., Fla.App.1962, 146 So.2d 577. In the Waters case the plaintiffs had finished shopping in the defendant’s store, and were proceeding toward a check-out counter, when another woman cut in front of them. At the same time a cashier two or three counters away, who was acquainted with the plaintiffs, motioned for them to come over to her counter. After motioning to plaintiffs, the cashier saw a jar of baby food fall out of another customer’s cart onto the floor between her and the plaintiffs, some four to five feet in front of the plaintiffs. The plaintiffs testified that they knew nothing about the jar falling. After the fall of the jar, the cashier immediately pushed a button signalling for a stock boy to clean up the debris, but shortly thereafter plaintiff-wife slipped and fell as she proceeded toward the counter operated by her acquaintance. The plaintiffs in that case proceeded on the theory that the defendant’s negligence consisted of not warning the plaintiffs in time to avoid the accident. The testimony in that case shows that the plaintiff fell almost immediately. It could not have been but a few seconds before she fell, as is borne out by her testimony:
“Q. How long a time if you can tell with reasonable certainty, how long a time was it from the time you had walked into the lane until you had fallen?
“A. Well we stood there several seconds before they motioned for us to come over.”
In the appeal from an order of involuntary non-suit in the Waters case, our court had this to say:
“We are mindful of the rule that negligence vel non is generally a jury question where the evidence of negligence, though slight, is appreciable; but where the plaintiffs’ evidence and all reasonable inferences disclose no such negligence, the trial court should grant defendant’s motion for affirmative charge.
“Viewing the evidence in the light most favorable to1 the plaintiffs, we are of the opinion that the trial court did not err in holding the plaintiffs’ evidence insufficient to make a prima facie showing of negligence on the part of the defendant. A contrary ruling would, in effect, redefine the line of responsibility of a proprietor to a business invitee and erroneously extend it into the area of insurance.”
In the present case, then, we are confronted with the question of the time element involved, from the moment the jar of mayonnaise fell, until the injury occurred. The time which elapsed was seconds longer in the present case than in the Waters case, but viewing the record, and allowing the usual presumption of correctness, how can it be said that the appellant was negligent upon any theory? We hold that the appellant was not negligent, and cannot be held liable.
The appellee has cited us a number of cases in Florida, but after due consideration, we cannot see that these cases are in point to the same extent as is the Waters case. In our research we have also considered 61 A.L.R.2d 6, an annotation on the liability of a proprietor of a store, office, or similar business premises,. for injuries from a fall due to the presence of litter or debris on the floor, which annotation contains practically all of the cases from the United States until 1958, the date of its publication.
We must hold that the lower court erred in not granting a directed verdict for the defendant at the conclusion of all of the testimony.
Reversed.
SMITH, C. J., and ODOM, ARCHIE M., Associate Judge, concur.